IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VALERO REFINING-TEXAS, L.P., and DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, and DIAMOND SHAMROCK REFINING COMPANY, L.P., and SUNBELT REFINING COMPANY, L.P., | ) | No. 03-1916C (Judge Firestone) |
| Plaintiffs, | ) | |
| vs. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO PARTIALLY LIFT STAY FOR PURPOSES OF FILING AMENDED COMPLAINT**

Plaintiffs, Valero Refining-Texas, L.P., Diamond Shamrock Refining and Marketing Company, Diamond Shamrock Refining Company, L.P., and Sunbelt Refining Company, L.P. (collectively "Valero"), respectfully request that the Court partially lift the stay of this matter to permit Valero to file an Amended Complaint.

This case involves Valero's claims to recover underpayments for military fuel under a series of contracts with the Defense Energy Support Center ("DESC"). Valero's original Complaint, filed on August 14, 2003, challenged the denial of claims filed under contracts that were the subject of a final decision issued by DESC on June 30, 2003.

After Valero filed its Complaint, DESC issued a final decision on June 8, 2004, denying one additional claim. Valero's Amended Complaint files suit concerning the additional claim that was the subject of the June 8, 2004 decision. A courtesy copy of the Amended Complaint Valero proposes to file should its motion be granted is attached hereto as Exhibit 1.

On November 24, 2003, this Court indefinitely stayed this matter pending resolution of the certified appeal in *Tesoro Hawaii, Inc., et al., v. United States*, No. 04-5064 (Fed. Cir.), which involves issues substantially similar to Valero's Complaint. On April 26, 2005, the Federal Circuit issued its decision in *Tesoro*. The Plaintiffs-Appellants in *Tesoro*, also represented by counsel of record for Valero here, intend to file a petition for rehearing *en banc*. Although Valero does not know exactly when the Federal Circuit will rule on the petition, it appears unlikely that the Federal Circuit will make its determination prior to the June 7, 2005 date by which Valero must file its Amended Complaint to preserve its additional claim. Accordingly, Valero seeks to file its Amended Complaint now and respectfully requests that the Court partially lift the stay of this action solely for that purpose.[1]

RCFC 15(a) provides that a party may amend a pleading "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *See generally Devon Energy Corp. v. United States*, 45 Fed. Cl. 519, 525-26 (1999). Counsel for Defendant has indicated in writing to Valero's counsel its consent to the filing of Valero's Amended Complaint. (See Ex. 2). Accordingly, Valero is entitled under RCFC 15(a) to file its Amended Complaint and respectfully requests that the Court partially lift the stay of this matter to permit it to do so.[2]

---

[1] The parties have agreed that, with the Court's concurrence, Defendant will have no obligation to respond to the Amended Complaint until the stay of proceedings is lifted for all purposes.

[2] Defendant, to date, has not filed a responsive pleading. Pursuant to RCFC 15(a), this provides an alternative basis supporting Valero's right to file its Amended Complaint.

For the foregoing reasons, Valero requests that its motion to partially lift the stay be granted and that its Amended Complaint be accepted for filing.

Respectfully submitted,

s/ J. Keith Burt

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5208 (Fax)

Counsel for Plaintiffs
Valero Refining-Texas, L.P., Diamond Shamrock Refining and Marketing Company, Diamond Shamrock Refining Company, L.P., and Sunbelt Refining Company, L.P.

*Of Counsel:*

Monica A. Aquino
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006

Martin E. Loeber
Valero Energy Corporation
One Valero Place
San Antonio, TX 78212

May 3, 2005

**Exhibit 1**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VALERO REFINING-TEXAS, L.P., and DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, and DIAMOND SHAMROCK REFINING COMPANY, L.P., and SUNBELT REFINING COMPANY, L.P., | ) | No. 03-1916C |
| Plaintiffs, | ) | (Judge Firestone) |
| vs. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

For their Amended Complaint, Plaintiffs, Valero Refining-Texas, L.P., Diamond Shamrock Refining and Marketing Company, Diamond Shamrock Refining Company, L.P., and Sunbelt Refining Company, L.P., allege as follows:

## INTRODUCTION

1. Plaintiffs entered a series of contracts with the United States government for the purchase of fuel.

2. The contracts contained a price adjustment clause that permitted the government to change the price it paid for fuel by as much as one hundred fifty percent of the contract price.

3. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit held that the government's price adjustment clause was illegal.

4. The government profited from its illegal price adjustment clause by materially underpaying Plaintiffs and then denied Plaintiffs' claims for relief.

5. Plaintiffs seek here to be made whole for the government's violation of the law.

## THE PARTIES

6. Plaintiff Valero Refining-Texas, L.P., is a Texas limited partnership.

7. Plaintiff Diamond Shamrock Refining and Marketing Company is a Delaware corporation.

8. Plaintiff Diamond Shamrock Refining Company, L.P., is a Delaware limited partnership.

9. Plaintiff Sunbelt Refining Company, L.P., is a Delaware limited partnership.

10. Plaintiffs, Valero Refining-Texas, L.P., Diamond Shamrock Refining and Marketing Company, Diamond Shamrock Refining Company, L.P., and Sunbelt Refining Company, L.P., are subsidiaries of Valero Energy Corporation, which is headquartered in San Antonio, Texas, and hereafter are referred to collectively as "Valero," except where individually identified.

11. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is part of the Defense Logistics Agency, which is part of the Department of Defense. DESC previously was known as the Defense Fuel Supply Center.

## JURISDICTION

12. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002), 41 U.S.C. §§ 601-13 (2002), and U.S. Const. amend. V.

## STATEMENT OF THE CASE

### I. THE CONTRACTS

13. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC

purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and substantial ability to affect the prices it paid for military fuels.

14. From at least 1985 to 1999, Valero and DESC entered a series of long-term contracts, including the contracts alleged herein, involving the purchase of over $700 million of military fuel. The contracts provided for the purchase of different types of military fuel at different locations in the United States.

15. Valero's contracts contained DESC's standard price adjustment clause. DESC's price adjustment clause permitted DESC to change the monthly price it paid Valero for fuel by as much as one hundred fifty percent of the contract price.

16. DESC has acknowledged at least two authorized purposes for its price adjustment clause: First, to protect DESC and Valero against market fluctuations, and, second, to ensure that the prices DESC paid Valero for military fuels under the long-term contracts reflected at least fair market value.

17. DESC's price adjustment clause permitted DESC to adjust the prices it paid Valero for fuel based on changes in price indexes published by the Department of Energy in the *Petroleum Marketing Monthly* (hereafter the "PMM").

18. Contrary to the acknowledged purposes of DESC's price adjustment clause, the Department of Energy did not design or intend for the PMM indexes to be used to set or adjust prices in response to market fluctuations, and the PMM indexes did not reflect the market value for the military fuels DESC purchased.

19. As a result of DESC's use of the PMM indexes in its price adjustment clause, DESC paid Valero prices for fuel that were materially below fair market value.

20. DESC used the PMM indexes in its price adjustment clause in contravention of the acknowledged purposes of the clause, and despite knowing that the PMM indexes were not designed to set or adjust prices in response to market fluctuations, and despite knowing that the PMM indexes did not reflect fair market value.

21. DESC also used other price indexes in its price adjustment clause to make price adjustments. On information and belief, DESC knew that some of the other price indexes it used to set or adjust prices were not appropriate for these purposes.

## II. DESC'S ILLEGAL PRICE ADJUSTMENT CLAUSE

22. DESC's price adjustment clause was illegal.

23. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the Federal Circuit held that the same price adjustment clause DESC used in Valero's contracts violated law and regulation because it did not base price adjustments on a supplier's own established prices or costs. Instead, DESC illegally based price adjustments on price indexes, such as the PMM indexes, which resulted in prices that were materially below fair market value.

24. DESC violated the law in other respects in awarding and administering Valero's contracts. DESC violated the Office of Federal Procurement Policy Act and its implementing regulations by using illegal auction techniques, at least after July 16, 1989. DESC awarded Valero's contracts in violation of DOD Federal Acquisition Regulation ("DFAR") pt. 219, by improperly soliciting and awarding portions of the procurements set aside for small and small disadvantaged businesses. DESC violated the equal protection component of the Fifth Amendment's due process clause by extending to minority-owned businesses bidding preferences that were not narrowly tailored to further a compelling government interest.

25. DESC violated the law knowingly.

26. DESC thus combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce the price it paid for fuel below fair market value.

27. DESC profited from violating the law by paying Valero materially less than fair market value for the fuel DESC purchased.

## III. CERTIFIED CLAIMS

28. Pursuant to the Contract Disputes Act, Valero submitted certified claims to DESC's contracting officer seeking relief from DESC's use of the PMM and other price indexes and DESC's violation of law in awarding and administering Valero's contracts.

29. Valero Refining-Texas, L.P., submitted certified claims under the following contracts on the date indicated:

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-93-D-0492 | April 2, 2003 |
| DLA600-93-D-0553<br>(DLA600-94-D-0553 by modification) | April 2, 2003 |
| SPO600-95-D-0473 | April 2, 2003 |

30. Diamond Shamrock Refining and Marketing Company submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-86-D-0498 | August 9, 2002 |
| DLA600-86-D-0636 | April 14, 2004 |
| DLA600-87-D-0608 | August 9, 2002 |
| DLA600-88-D-0527 | April 2, 2003 |
| DLA600-88-D-0570 | April 2, 2003 |
| DLA600-88-D-0632 | April 2, 2003 |
| DLA600-89-D-0497 | December 4, 2002 |
| DLA600-89-D-0587 | April 2, 2003 |
| DLA600-90-D-0487 | April 2, 2003 |
| DLA600-90-D-0563 | December 4, 2002 |
| DLA600-90-D-0567 | August 9, 2002 |
| DLA600-90-D-0578 | August 9, 2002 |
| DLA600-91-D-0506 | April 2, 2003 |
| DLA600-91-D-0549 | August 9, 2002 |
| DLA600-92-D-0479 | April 2, 2003 |
| DLA600-92-D-0521 | December 4, 2002 |
| DLA600-92-D-0562 | August 9, 2002 |
| DLA600-93-D-0484 | August 9, 2002 |
| DLA600-93-D-0525 | August 9, 2002 |
| DLA600-93-D-0548 (DLA600-94-D-0548 by modification) | December 4, 2002 |

31. Diamond Shamrock Refining Company, L.P., submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
|---|---|
| SPO600-95-D-0477 | September 9, 2002 |
| SPO600-96-D-0464 | September 9, 2002 |
| SPO600-96-D-0480 | September 9, 2002 |
| SPO600-96-D-0500 | September 13, 2002 |
| SPO600-97-D-0466 | September 9, 2002 |
| SPO600-97-D-0524 | September 9, 2002 |
| SPO600-98-D-0472 | September 9, 2002 |
| SPO600-98-D-0496 | September 9, 2002 |
| SPO600-99-D-0468 | September 9, 2002 |
| SPO600-99-D-0480 | September 9, 2002 |

32. Sunbelt Refining Company, L.P., submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-90-D-0569 | September 9, 2002 |
| DLA600-91-D-0561 | December 4, 2002 |
| DLA600-92-D-0523 | September 9, 2002 |

## IV. DESC'S FINAL DECISIONS

33. On June 30, 2003, DESC's contracting officer issued a final decision on the claims Valero submitted on August 9, 2002, September 9, 2002, September 13, 2002, December 4, 2002, and April 2, 2003.

34. On June 8, 2004, DESC's contracting officer issued a final decision on the claim Valero submitted on April 14, 2004.

35. Despite having determined the price of fuel illegally, DESC asserted in its final decisions that it had paid Valero *exactly* fair market value for the fuel Valero supplied under the long-term contracts.

36. DESC denied that Valero was entitled to any recovery and denied all of Valero's claims. DESC alternatively asserted that it was entitled to "re-price" the contracts and to recover $2,099,939.00 from Valero.

37. Pursuant to the Contract Disputes Act, Valero hereby timely files suit upon and appeals the entirety of DESC's June 30, 2003 and June 8, 2004 final decisions.

**COUNT I**
**(Illegality)**

38. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37, above.

39. DESC knowingly awarded and administered each of Valero's contracts in violation of law and regulation, *inter alia*, by basing price adjustments on price indexes, such as the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

40. DESC knowingly awarded and administered each of Valero's contracts in violation of law and regulation, *inter alia*, by violating the Office of Federal Procurement Policy

Act and its implementing regulations, DFAR pt. 219, and the equal protection component of the Fifth Amendment's due process clause.

41. DESC's violation of law and regulation in awarding and administering Valero's contracts damaged Valero.

42. Valero is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $131,415,479.84, plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Misrepresentation)**

43. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42, above.

44. DESC knowingly awarded and administered Valero's contracts in violation of law and regulation.

45. DESC knowingly based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

46. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

47. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the PMM and other price indexes were not designed or intended to be used to set or adjust prices.

48. Valero reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

49. DESC's material and/or fraudulent misrepresentations damaged Valero.

50. Valero is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $131,415,479.84, plus interest, by way of rescission and restitution, damages, or reformation.

**COUNT III**
**(Breach of Contract)**

51. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50, above.

52. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Valero reasonably relied in entering the contracts.

53. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material condition of the contracts upon which Valero reasonably relied in entering the contracts.

54. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

55. In contravention of DESC's contractual obligations, DESC based price adjustments on standards such as the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

56. DESC's violation of law and regulation in awarding and administering the contracts constituted breach of contract.

57. DESC's use of the PMM and other price indexes to set or adjust prices under the contracts constituted breach of contract.

58. DESC's breach of contract damaged Valero.

59. Valero is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $131,415,479.84, plus interest, by way of rescission and restitution, or damages.

**COUNT IV**
**(Implied-In-Fact Contract)**

60. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59, above.

61. DESC knowingly awarded and administered each of Valero's contracts in violation of law and regulation.

62. DESC's violation of law and regulation in awarding and administering Valero's contracts rendered at least the price terms of Valero's contracts invalid and unenforceable.

63. DESC's violation of law and regulation in awarding and administering Valero's contracts damaged Valero.

64. At least the pricing terms of Valero's contracts are replaced by an implied-in-fact contract to pay the fair market value of the fuel Valero delivered to DESC.

65. Valero is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $131,415,479.84, plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT V**
**(Failure of Consideration And Frustration of Purpose)**

66. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 65, above.

67. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Valero reasonably relied in entering the contracts and a material purpose of the contracts.

68. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material part of the consideration upon which Valero reasonably relied in entering the contracts and a material purpose of the contracts.

69. DESC violated law and regulation in awarding and administering the contracts.

70. DESC based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

71. DESC's violation of law and regulation in awarding and administering the contracts constituted a failure of consideration and frustrated the purpose of the contracts.

72. DESC's use of the PMM and other price indexes that were not designed or intended to be used to set or adjust prices constituted a failure of consideration and frustrated the purpose of the contracts.

73. This failure of consideration and frustration of the purpose of the contracts damaged Valero.

74. Valero is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $131,415,479.84, plus interest, by way of rescission and restitution.

**COUNT VI**
**(Mistake)**

75. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 74, above.

76. Valero entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Valero reasonably relied in entering the contracts.

77. Valero entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Valero reasonably relied in entering the contracts.

78. DESC did not comply with law and regulation in awarding and administering the contracts.

79. DESC based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

80. If DESC did not knowingly award and administer contracts in violation of law and regulation, as alleged above, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

81. If DESC did not know that the PMM and other price indexes were not designed or intended to be used to set or adjust prices, as alleged above, then DESC must be presumed to have used the PMM and other price indexes with the intent that they were designed or intended to be used to set or adjust prices.

82. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Valero entered and performed contracts in violation of law and regulation.

83. As a result of a mistake, DESC and Valero entered and performed contracts using the PMM and other price indexes to set or adjust prices.

84. If DESC and Valero had not been mistaken, DESC and Valero would not have entered and performed contracts in violation of law and regulation.

85. If DESC and Valero had not been mistaken, DESC and Valero would not have entered and performed contracts using the PMM and other price indexes to set or adjust prices.

86. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Valero's mistake and failed to meet its duty timely to disclose this mistake to Valero.

87. If DESC was not mistaken in awarding and performing contracts using the PMM and other price indexes to set or adjust prices, then DESC knew or should have known of Valero's mistake and failed to meet its duty timely to disclose this mistake to Valero.

88. The parties' mutual mistake and/or DESC's failure to disclose Valero's unilateral mistake damaged Valero.

89. Valero is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $131,415,479.84, plus interest, by way of reformation, or rescission and restitution.

**COUNT VII**
**(Taking)**

90. Valero realleges and incorporates by reference the allegations set forth in paragraphs 1 through 89, above.

91. Valero has property rights in and in relation to the fuel it delivered to DESC. In addition, Valero has property rights in relation to DESC's procurement of the fuel Valero delivered.

92. With no fully supporting claim of right, DESC took possession of and infringed upon Valero's property rights in and in relation to the fuel it delivered.

93. DESC's taking of Valero's property was for a public purpose.

94. To the extent that DESC's taking of Valero's property was effected in conjunction with a violation of law and regulation, DESC acted within the general scope of its authority to procure the fuel.

95. DESC effected a taking of Valero's property within the meaning of the Fifth Amendment of the United States Constitution.

96. DESC has not paid Valero just compensation for the taking of Valero's property.

97. DESC's failure to pay Valero just compensation for the taking of its property violated the Fifth Amendment of the United States Constitution and thereby damaged Valero.

98. Valero is entitled to recover just compensation in an amount of at least $131,415,479.84, plus interest from the time of the taking.

**PRAYER FOR RELIEF**

WHEREFORE, Valero requests judgment as follows:

1. $131,415,479.84, plus interest, or such further amount as established prior to judgment;

2. Denial of DESC's re-pricing claim;

3. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

____________________________

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
Washington, DC 20006
(202) 263-3208 (phone)
(202) 263-5208 (fax)

Counsel for Plaintiffs
Valero Refining-Texas, L.P., Diamond Shamrock Refining and Marketing Company, Diamond Shamrock Refining Company, L.P., and Sunbelt Refining Company, L.P.

*Of Counsel:*

Monica A. Aquino
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006

Martin E. Loeber
Valero Energy Corporation
One Valero Place
San Antonio, TX 78212

May [], 2005

**Exhibit 2**

MAYER BROWN ROWE & MAW

**VIA OVERNIGHT MAIL**

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel (202) 263-3000
Main Fax (202) 263-3300
www.mayerbrownrowe.com

**J. Keith Burt**
Direct Tel (202) 263-3208
Direct Fax (202) 263-5208
kburt@mayerbrownrowe.com

April 18, 2005

Steven J. Gillingham
United States Department of Justice
Attn: Classification Unit - 8th Floor
1100 L St., N.W.
Washington, D.C. 20530

Re: *Valero Refining-Texas, L.P. v. United States*, No. 03-1916C (Fed. Cl.)

Dear Steve:

We are writing to request your consent to file an Amended Complaint in *Valero Refining-Texas, L.P. v. United States*, No. 03-1916C (Fed. Cl.). After the Complaint was filed on August 14, 2003, DESC issued a final decision on June 8, 2004, denying an additional claim. Valero seeks to file the Amended Complaint to challenge this additional final decision. Please advise if we have your consent to file the Amended Complaint.

In as much as RCFC 15(a) requires written consent, we would appreciate if you would reflect the government's consent to the filing of the Amended Complaint by return letter or, if more convenient, by endorsing this letter below and returning it to us. The Amended Complaint must be filed no later than June 7, 2005, and, accordingly, we appreciate your prompt response.

Please do not hesitate to contact us if we may be of any assistance.

Sincerely,

J. Keith Burt

**SO AGREED**:

Steven J. Gillingham
United States Department of Justice

________________________ Date: 4/20/05