STANDARD FORM 26, JULY 1966
GENERAL SERVICES ADMINISTRATION
FED. PROC. REG. (41CFR) 1-16.101

# AWARD/CONTRACT

PAGE 1 OF 9

| | |
|---|---|
| 1. CONTRACT (Proc. Inst. Ident.) NO. | DLA600-81-D-0445 |
| 2. EFFECTIVE DATE | 81 APR 24 |
| 3. REQUISITION/PURCHASE REQUEST/PROJECT NO. | SEE RFP FILE CONSOLIDATED PRs |
| 4. CERTIFIED FOR NATIONAL DEFENSE UNDER BSDA REG. 2 AND/OR DMS REG. 1. RATING: | |
| 5. ISSUED BY — CODE SC0600 | DEFENSE FUEL SUPPLY CENTER<br>CAMERON STATION TWX 710-832-0600 2.2a<br>ALEXANDRIA, VIRGINIA 22314 2.2c<br>ATTN: M. CIBOROWSKI/DFSC-PD/202-274-7453 |
| 6. ADMINISTERED BY (If other than block 5) — CODE | PRE-AWARD SURVEY - NONE |
| 7. DELIVERY | ☐ FOB DESTINATION<br>☒ OTHER (See below) SEE SCHEDULE |
| 8. CONTRACTOR NAME AND ADDRESS (Street, city, county, State, and ZIP code) — CODE 6G077 — FACILITY CODE | GULF OIL CO, US<br>PRODUCT SUPPLY DEPARTMENT<br>P.O. BOX 1524<br>HOUSTON, TX 77001 |
| 9. DISCOUNT FOR PROMPT PAYMENT | NET 30 DAYS |
| 10. SUBMIT INVOICES (4 copies unless otherwise specified) TO ADDRESS SHOWN IN BLOCK | SEE BLOCK 12 |
| 11. SHIP TO/MARK FOR — CODE | SEE SCHEDULE |
| 12. PAYMENT WILL BE MADE BY — CODE SA4900 | DEFENSE FUEL SUPPLY CENTER<br>CAMERON STATION, BUILDING 5<br>ATTN: DFSC-CDX<br>ALEXANDRIA, VIRGINIA 22314 |
| 13. THIS PROCUREMENT WAS | ☐ ADVERTISED, ☒ NEGOTIATED, PURSUANT TO: ☒ 10 U.S.C. 2304 (a)(10) ☐ 41 U.S.C. 252 (c)( ) |
| 14. ACCOUNTING AND APPROPRIATION DATA | SEE CLAUSE L150 |

| 15. ITEM NO. | 16. SUPPLIES/SERVICES | 17. QUANTITY | 18. UNIT | 19. UNIT PRICE | 20. AMOUNT |
|---|---|---|---|---|---|
| | (a) This document confirms and incorporates by reference the wire Notice of Award dated 24 Apr 81 as amended by wire dated 30 APR 81. | | | | |
| | (b) A copy of Clause E12 (Contract Schedule) and various other clauses agreed to by the parties are attached hereto for informational purposes. In addition, pages 2 through 5 and pages 108 through 147 of RFP DLA600-81-R-0061, dated 80 Oct 16 and Amendments 0001-0005 are also attached for convenience and informational purposes. The following clauses are deleted: E19.04, L94, L97, L176, L176.01, L176.03 and L195. | | | | |

21. Estimated 5 yr TOTAL AMOUNT OF CONTRACT $ 361,953,000.

CONTRACTING OFFICER WILL COMPLETE BLOCK 22 OR 26 AS APPLICABLE

22. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 2 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

26. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

23. NAME OF CONTRACTOR
BY (Signature of person authorized to sign)

27. UNITED STATES OF AMERICA
BY (Signature of Contracting Officer)

24. NAME AND TITLE OF SIGNER (Type or print)
Charles H. Nelson
General Mgr.-Prod. Supply

25. DATE SIGNED
6/1/81

28. NAME OF CONTRACTING OFFICER (Type or print)
MARIE G. PAGAN

29. DATE SIGNED
1981 JUL 13

103

U.S. GOVERNMENT PRINTING OFFICE 1966 OF—225-105—8601

SCHEDULE

SUPPLIES –

DLA600-81-D-0445

E12 SUPPLIES TO BE FURNISHED (DFSC 1968 MAY)

(A) The supplies to be furnished hereunder, F.O.B. delivery points, method of delivery and estimated quantities are as follows.

(B) Prices indicated hereunder are subject to E19.12, ECONOMIC PRICE ADJUSTMENT (DFSC 1980 MAY)

| ITEM NUMBER | ESTIMATED QUANTITY GALS | METHOD OF DELIVERY | UNIT PRICE |
|---|---|---|---|
| | DFSC | JP-5 | NSN 9130-00-273-2379 |
| 0101 | 90,000,000 | TK | $1.093000 w/FSII |

Origin Delivery of 90,000,000 gallons at Port Arthur, TX.

| | | | |
|---|---|---|---|
| | 45,000,000 | TK | $1.093000 w/FSII |

Origin Delivery of 45,000,000 gallons at Port Arthur, TX (2nd through 5th Program Years)

| | | | |
|---|---|---|---|
| | DFSC | JP-4 | NSN 9130-00-256-8613 |
| 0201 | 63,000,000 | TK | $1.061000 w/FSII |

Origin Delivery of 63,000,000 gallons at Port Arthur, TX.

NOTES: 1. The ordering period on this contract is:

(a) JP-5

| QUANTITY (GALS) | PROGRAM YEAR | ORDERING PERIOD |
|---|---|---|
| 90,000,000 | FIRST | Date of Award through 31 Mar 82. |
| 45,000,000 | SECOND | 1 Apr 82 through 31 Mar 83 |
| 45,000,000 | THIRD | 1 Apr 83 through 31 Mar 84 |
| 45,000,000 | FOURTH | 1 Apr 84 through 31 Mar 85 |
| 45,000,000 | FIFTH | 1 Apr 85 through 31 Mar 86 |

(b) JP-4 – Date of award through 31 Mar 82.

2. Under Clause F16.01, TURBINE FUEL, AVIATION, GRADES JP-4 AND JP-5, which incorporates specification MIL-T-5624L, corrosion inhibitor is required. Accordingly, the contractor shall be allowed thirty days from date of award to provide for the installation of corrosion inhibitor injection facilities. Until such facilities are installed, JP-4 without corrosion inhibitor will not be acceptable to the Army or the Air Force; JP-5 without corrosion inhibitor will be acceptable to the Navy during this thirty (30) day period. The Delivery Period for JP-4 shall begin 30 days after date of award.

E12 - SUPPLIES (Cont'd)

DLA600-81-D-0445

NOTES: (Cont'd)

3. The Small Business, Labor Surplus Area and Disadvantaged Business Concerns Subcontracting Program Clauses in this contract will be administered by the cognizant Defense Contract Administration Services Region cited below:

DCASR DALLAS
ATTN: SMALL BUSINESS SPECIALIST
Merchandise Mart Bldg.
500 South Ervay Street
Dallas, TX 75201

4. The amount included in price per gallon for JP-5 ordered with Fuel System Icing Inhibitor (FSII) is $.0062. Item 0101 shall be decreased by $.0062 per gallon for product ordered without FSII.

5. The amount included in price per gallon for JP-4 ordered with Fuel System Icing Inhibitor (FSII) is $.0040. Item 0201 shall be decreased by $.0040 per gallon for product ordered without FSII.

6. Unless the parties otherwise agree, the maximum/minimum quantities available for individual deliveries shall be as shown below:

| ITEM | SHIPPING POINT | PRODUCT | MOD | MAXIMUM (BBLS) | MINIMUM (BBLS) |
|---|---|---|---|---|---|
| 0101 | Port Arthur, TX | JP-5 | TK | 200,000 | 130,000 |
| 0201 | Port Arthur, TX | JP-4 | TK | 135,000 | 75,000 |

7. Notwithstanding Amend 0003 to the solicitation under Clause H1.09, DETERMINATION OF QUANTITY, the 1980 American Edition of Table 6B of the ASTM-IP-API Petroleum Measurement Tables (ASTM Designation D-1250) will be used.

8. Under Clause H52, TANKER DEMURRAGE AND LOADING CONDITIONS, paragraph (e)(ii)(4) is deleted and the following substituted in lieu thereof:

"If for any reason the Contractor is delayed in loading the tanker, or there is a delay in releasing the tanker for sailing, because of action of the Inspector, the ship's Master or her crew that arises through no fault of the Contractor, such basic allowed laytime shall be increased by the duration of such delay."

As a result of the above change: DFSC Clause H52 has been renumbered H52.100 with a date of 1981 MAR.

DLA600-81-D-0445

9. Reference is made to Clause L171, SUBCONTRACTING PLAN FOR SMALL BUSINESS AND SMALL DISADVANTAGED BUSINESS CONCERNS (1980 AUG). The negotiated subcontracting plan and supplemental as submitted by Gulf dated 2 and 24 Mar 81 is incorporated and made a material part of the contract. (See Attachment A)

10. The correct clause number for the clause entitled "Minimum Quantity" which is cited in clauses L31.200, LIMITATION OF PRICE AND CONTRACTOR OBLIGATIONS, and L81.05, INDEFINITE QUANTITY: SCOPE OF CONTRACT, is L81.07 in lieu of as indicated.

H1.08.200 DELIVERIES AND CONTRACT PERIOD (DFSC 1980 APR)

(a) The period of this contract during which the Ordering Officer may order pursuant to the clause entitled: INDEFINITE QUANTITY: SCOPE OF CONTRACT is from date of award through the following periods, as applicable:

| | | |
|---|---|---|
| First Program Year | - | 31 Mar 1982 |
| Second Program Year | - | 31 Mar 1983 |
| Third Program Year | - | 31 Mar 1984 |
| Fourth Program Year | - | 31 Mar 1985 |
| Fifth Program Year | - | 31 Mar 1986 |

(b) Notwithstanding paragraph (a) above, except at its option, Contractor shall not be required to make delivery hereunder prior to: 01 April 1981.

(c) In so far as practicable, the Government will attempt to lift in approximately equal monthly quantities throughout each applicable program year. The following applies to suppliers which offered product over the period 01 Apr 1981 through the applicable period indicated in (a) above:

(i) When the Government calls for delivery on a daily basis, the supplier shall not be required, except at its option, to make deliveries of any grade of product at a daily rate which is in excess of the contract quantity for each applicable program year of such grade of product for delivery at or shipment from each designated refiners or bulk plant location, divided by 335 days: or

(ii) When the Government calls for delivery on other than a daily basis, the contractor shall not be required to accumulate, except at its option, any such product at any such location and to subsequently make deliveries in excess of 9.09% in any one month, of the contract quantity for each applicable program year of the applicable grade of product. However, where the supplier offered a greater quantity for individual tanker loading, the supplier will deliver that greater quantity if the Government has so controlled its orders in past month or months as to permit an accumulation of the greater quantity. The supplier will be required to deliver in excess of 9.09% per month of the applicable program year's quantity if the delivery is to be made F.O.B. tanker at origin and no other quantities have been ordered for delivery during the applicable month and the 30,000 bbls., minimum under paragraph (d) below is greater than such 9.09% quantity.

(d) Except at its option, the Contractor shall not be required to deliver F.O.B. tanker at origin in any one delivery a quantity of product(s) which is less than 30,000 bbls. except, when on the last delivery, the quantity available pursuant to the Clause entitled INDEFINITE QUANTITY; SCOPE OF CONTRACT, is less than 0,000 barrels.

he above Clause H1.08.200 supersedes that which appears on page 114 of the solicitation ortion of the award document.

E19.09-1 UPWARD CEILINGS ON ECONOMIC PRICE ADJUSTMENT (DFSC 1981 FEB) DLA600-81-D-0445

(a) As used throughout this clause, the term "base price" will mean:

(1) During the first program year, the original contract price.

(2) During any subsequent program year, either the effective contract price as of the start of the subsequent program year or the price agreed upon, as of the start of the subsequent program year, pursuant to the Price Review provisions of the contract.

(b) The Contractor agrees that the total increase in any contract line item unit price, pursuant to the Economic Price Adjustment provisions of this contract, shall not exceed 50 percent of the base price in any applicable program year, except as provided hereafter.

(1) If, at any time the contractor has reason to believe that within the near future, a price adjustment under the Economic Price Adjustment Provisions of this contract will result in an adjusted unit price which exceeds the current ceiling price for the applicable item(s), he shall promptly notify the Contracting Officer of the expected increase. The notification shall include the Contractor's proposal of a revised ceiling which he believes is sufficient to permit contract completion. The proposal shall include the appropriate explanation(s) and/or documentation. Both parties shall promptly attempt to reach agreement on a new ceiling.

(2) If, in the absence of agreement on a new ceiling, the Contractor experiences a price increase which results in an adjusted unit price above the current ceiling, he shall promptly notify the Contracting Officer. Absent a new ceiling and as long as the applicable unit price(s) exceed the current ceiling, the Contractor is not obligated to fill either pending or future orders for the applicable line items, as of the effective date of the price increase. If, however, notwithstanding the lack of agreement on a new ceiling, the Contracting Officer indicates in writing that the Government is prepared to purchase the line items in question for the price(s) as adjusted beyond the current ceiling, the Contractor shall continue to honor such orders.

E19.12 ECONOMIC PRICE ADJUSTMENT (DFSC 1980 MAY)

The Contractor represents that the unit prices set forth in this contract do not include any contingency allowance to cover the possibility of increase in the published or posted prices referenced in the Contractor's bid or proposal.

PART A

As used throughout this Section:

(a) The term "listed items" means the items of Section E of the Schedule that are listed in the Reference Price Tabulation of Part C of this Section and are the only items to which escalation shall apply, unless otherwise provided in the contract schedule.

(b) The term "base price" means the unit price set forth opposite the item in Section E of the Schedule.

(c) The term "reference price" means the price set forth in this Section with which the base price is to fluctuate.

(d) The term "date of delivery" means

(i) the date and time vessel begins to load where contract calls for delivery at origin into tanker or barge;

(ii) the date and time vessel begins to discharge where contract calls for delivery at destination by tanker or barge;

(iii) the date and time product commences to move past the specified f.o.b. point where contract calls for delivery into storage by pipeline;

(iv) the date product is received for all methods of delivery other than (i), (ii), and (iii) above.

PART B

(a) The Contractor shall notify the Contracting Officer, Defense Fuel Supply Center, Cameron Station, Alexandria, Va., 22314 of any change in the reference price by telegram dated (preferably confirmed promptly by letter), registered letter mailed, or unregistered letter received, within fourteen (14) days from the date thereof.

(i) In the event the Contractor fails to notify the Contracting Officer of any increase in reference price, such increase shall apply only to deliveries made on and after the date of receipt by the Contracting Officer of a written notification from the Contractor of such increase.

(ii) In the event the Contractor fails to give notice of a decrease in the reference price, such decrease shall apply to all deliveries made on or subsequent to the date of such decrease.

(iii) The Contracting Officer will issue a Change Order to this contract to reflect any change pursuant to this Section.

(b) Notwithstanding any provision of this Section to the contrary, the prices payable under this contract shall in no event exceed any of the following:

(i) the maximum prices shown in column VII of the Reference Price Tabulation,

or

(ii) the Contractor's legal prices under the Federal Energy Administration's Mandatory Petroleum Price Regulations, if applicable.

(c) In the event the reference price product is not subject to Department of Energy price control, Contractor warrants as follows:

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions:

(ii) During the term of this contract, substantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iii) During the term of this contract, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sale of the reference price product to non-government customers except where constrained by contract.

(d) In the event the reference price product is subject to Department of Energy price controls, Contractor warrants as follows:

(i) The prices to be invoiced hereunder for listed items shall be computed in accordance with these economic price adjustment provisions.

(ii) The reference price is a price posted by Contractor for a product which, as of the contract award date, is subject to Mandatory Price and Allocation controls under regulations issued by the Department of Energy (DOE) (10 Code of Federal Regulations, Parts 210, 211, 212).

(iii) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, sustantial sales to non-government customers of the reference price product are made by Contractor at prices which move directly with the posted reference price.

(iv) Any change in the reference price furnished for the purpose of economic price adjustment hereunder will not exceed contractor's maximum allowable price for the reference price product under DOE Mandatory Petroleum Price Regulation.

(v) During the term of this contract, while DOE Mandatory Price and Allocation controls are in effect, each change in reference price furnished under this economic price adjustment clause will be reflected in corresponding price changes in sales by the reference price product to non-government customers except where constrained by contract.

(e) In connection with the warranties in (c) and (d) above, Contractor agrees that the Contracting Officer or his designated representative, who are employees of the U.S. Government, shall have the right to examine books, records, documents, and other data of the Contractor as may be required to verify Contractor's compliance.

(f) The Contractor shall have the right to appeal under the Clause entitled "Disputes" from any determination made by the Contracting Officer under this Clause.

(g) No change in contract price shall be processed under this clause until verification of posting change has been received by the Contracting Officer.

(h) In the event the reference price is discontinued, or its method of calculation is altered substantially, the parties shall mutually agree upon an appropriate and comparable substitute for determining the price adjustment described herein. This contract shall be amended to reflect such substitute reference price, effective on the date prior reference price is discontinued or altered. In the event the parties fail to agree on an appropriate substitute, the matter shall be resolved in accordance with the Disputes clause of the contract.

(i) Notwithstanding any other provision of the clause, no upward adjustment shall apply to supplies which are required to be delivered prior to the effective date of the adjustment unless the Contractor's failure to deliver in accordance with the delivery schedule arises from causes beyond the control and without the fault or negligence of the Contractor within the meaning of the clause of this contract entitled "Default", in which case the contract shall be amended to make an equitable extension of the delivery schedule.

PART C

(a) The prices payable under this contract for listed items shall be the base price for the listed item increased or decreased by the amount, determined according to the formula in paragraph (b) below, that the reference price for the listed item shall have been increased or decreased to and including the date of delivery.

(b) The amount of increase or decrease in the base price shall be
(check appropriate box and complete applicable blanks)

[x] the same number of cents, or fractions thereof, that the reference price increases or decreases per like unit of measure.

[ ] the number of cents, or fractions thereof, determined by the ratio of $________ per gallon for each $_______ per barrel that the reference price increases or decreases.

[ ] the number of cents, or fractions thereof, at the rate of $__________ per gallon for each full $_________ per barrel that the reference price increases or decreases.

(c) The reference price with which the base price for the item is to fluctuate and which is more fully defined in the tabulation to follow) is
(check appropriate box and complete applicable blanks)

[ ] price posted by

[x] the average of the prices posted by

E19.12 (Cont'd) DLA600-81-D-0445

| | |
|---|---|
| ____ (name of company) | GULF OIL CO (name of company) |
| ____ (name of company) | ____ (name of company) |
| ____ (name of company) | ____ (name of company) |

(The name of the company or companies posting the reference price shall be identified in Column II of the following tabulation by the number appearing opposite the name of the company(s)).

| I ITEM NO. (LISTED ITEMS) | II NAME OF COMPANY(S) | III COMPANY NAME OF PRODUCT | IV LOCATION WHERE POSTED PRICE IS APPLICABLE | V METHOD OF DELIVERY APPLICABLE TO THE POSTED PRICE | VI POSTED PRICE PAY AS OF See Below* | VII MAXIMUM PRICE PAYABLE UNDER CONTRACT ** |
|---|---|---|---|---|---|---|
| 0101 | Gulf Oil Co. - U.S. | Gulf's major Airport Jet Fuel prices Airline Accounts Sched. | Gulf Head-quarters Houston, TX | F.O.B. Airport Terminal | 1.0910+ 3/11/81 | See Clause E19.09-1 |
| 0201 | Gulf Oil Co. - U.S. | Gulf's major Airport Jet Fuel Prices as above | Gulf Head-quarters Houston, TX | F.O. B. Airport Terminal | 1.0910 x 50%+ 3/11/81 | See Clause E19.09-1 |
| | | Gulf's Good Gulf Gaso. Dealer Tank wagon Posting Houston, TX | Gulf Mkt. Houston District Houston, TX | F.O.B. Truck Delivery Rack | 1.1020 x 50%+ 3/2 0/81 ____ 1.0965++ | |

+AVERAGE OF THE POSTED PRICE

*EXCLUDES ALL TAXES
**INCLUDING ANY TAX INCLUDED IN THE BASE PRICE

++THE REFERENCE PRICE FOR ITEM 0201 IS 50% OF GULF'S GOOD GULF GASOLINE DEALER TANK WAGON PRICE POSTED AT HOUSTON, TX PLUS 50% OF THE AVERAGE OF GULF'S MAJOR AIRPORT JET FUEL PRICES-AIRLINE ACCOUNTS POSTED PRICE AT HOUSTON, TX.

I14.200 INSPECTION AND ACCEPTANCE (DFSC 1979 NOV)

On deliveries F.O.B. origin, acceptance of the supplies furnished hereunder will take place at origin notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. On deliveries F.O.B. destination, acceptance of the supplies furnished hereunder will take place at destination notwithstanding that inspection by the Government may take place elsewhere prior to acceptance. The office responsible for inspection, in behalf of the Government, shall be as follows:

| ITEM(S) | SOURCE OF PRODUCT AND/OR SHIPPING POINT | INSPECTOR(S) |
|---|---|---|
| 0101<br>0201 | GULF OIL CORP.<br>PORT ARTHUR REFINERY<br>PORT ARTHUR, TX 77640 | DCASMA SAN ANTONIO<br>615 EAST HOUSTON ST<br>P.O. BOX 1040, MAIN POST OFFICE<br>SAN ANTONIO, TX 78294 |

CONOCO

Conoco Inc.
P.O. Box 2197
Houston, TX 77252

December 18, 1986

General Griffith
Defense Fuel Supply Center
Cameron Station
Alexandria, VA 22304-6160

Dear General Griffith,

This letter is in regard to the method used to determine the bid award for JP-4. It is Conoco's opinion that a new method using current, readily available, published information should be substituted for the present calculation. This change would give bidders and the government the opportunity to make a more realistic evaluation.

Conoco has no complaint with the way the PMM is calculated and used but with the timing of its availability. A major flaw in the process is the PMM Journal lags three months from the designated month, thus the suppliers must guess the reference price prior to bidding. Due to the fact that there are numerous terminals used in the reference price calculation, it is difficult to forecast the PMM using information available within Conoco or the industry. Since the reference price is based on a single month's market activity, there is no way of predicting with certainty what the actual reference number will be. This makes bidding JP-4 a real "gamble". Even in a public auction, a minimum bid is given from which to start the bidding process.

Furthermore, prior to the final bid, the government sends each bidder a target price. This year's inland target price was 36 cents/gallon. The actual June PMM Reference Price was 50.69 cents/gallon or 14.69 cents/gallon higher. Hence, there is no logical correlation between target price and PMM price.

Based on the large discrepancy seen in the last bid cycle, a new JP-4 price calculation is needed. Changing the bid process to one that uses readily available information takes away the uncertainty from both the bidder and the government. This protects both parties from losing money due to the actual reference price being higher or lower than projected.

We realize how difficult it is to determine an index that represents all of the activity in a particular PAD. By changing the current calculation to one that utilizes readily available information this would enable all of those involved to make viable decisions about what the "real" value is for JP-4.

Please let me know your thoughts on this matter. I will be looking forward to hearing from you.

Franklin P. Perez
Manager,
Administration & Supply
Specialty Products Division
Wholesale Marketing

cc: Gordon Regan, Jr., Houston
Dennis Neff, Houston
Toby Casteel, Houston
Paul Madison, Houston
Chuck Minard, Houston
Sally Anderson, Houston
Don Unruh, Houston
Bill Cayan, Houston

scau

platts

# Market Prices

Platts' industry-standard price assessments are critical elements of short- and long-term contracts worldwide. Our pricing products range from real-time alert services to traditional newsletters and historical pricing and are delivered though a variety of medium to suit your individual needs. Our real-time market services help industry specialists understand price trends and emerging consensus as they're being formed – putting them in a better position to make faster, more profitable decisions. Platts' independent derivative assessments are one of the only sources of unbiased mark-to-market data for valuing positions.

## Oil

Asia-Pacific / Arab Gulf Marketscan (APAG)
Bunkerwire
China Fuel Oil Report
**Please note this publication is only available in Chinese.**
China Fuel Oil Report (English)
China Wire
Clean Tankerwire Monthly
Crude Oil Marketwire
Dirty Tankerwire
Dirty Tankerwire Monthly
Dispatch - Oil
European Marketscan
Forward Curve - Oil
Global Alert
Historical Price Data
Inside Energy
Latin American Wire
LPGaswire
Marine Alert
North American Crude Wire
North Sea Letter
Oilgram Price Report
Refiner
US Oil Data 1935 and Beyond
US Marketscan

Copyright © 2006 - Platts, All Rights Reserved
The McGraw-Hill Companies

The McGraw-Hill Companies

platts

Get more out of your business.
ey.com/us/energycenter ERNST & YOUNG
Quality In Everything We Do



# Glossary

Other glossaries: Derivatives Glossary - Technicals Glossary - Glossary of International Glossary of Terms: EIA - US Power Glossary: EIA

A-B-C-D-E-F-G-H-I-J-K-L-M-N-O-P-Q-R-S-T-U-V-W-Z

15-Day Brent

## A

A/F
abandon
accumulation
AG
AGO
alkylate
alternating current (AC)
alternating current distribution
American style option
ampere (amp)
ancillary services
Andrew's Pitchfork
Aniline point
anode
ANS
anthracite
API
API gravity
APT
ARA
Arab Gulf
Aramco
arbitrage
aromatics
asph
asphalt
assay
assessment
associated gas
at-the-money
AUD

70

## spinning reserve

Unused capacity available from units connected to and synchronized with the grid to serve additional demand. The spinning reserve must be under automatic control to instantly respond to system requirements.

## spot market

A market where goods are traded for immediate delivery.

## SPR

Strategic Petroleum Reserve in the US.

## spread

The difference between two prices, either across time or between commodities or instruments.

## spread (options)

An option trade in which two or more open positions are established in order to trade the differentials and offset risk. Option spreads may use different strike prices and/or expiry dates.

## Spread-trading

Buying one instrument/commodity and selling another, with a view to profiting from the change in the gap between the two markets.

## steam cracker

Ethylene plant. A petrochemical plant which produces olefins, particularly ethylene, and, in some cases, aromatics.

## steam generation plant

A thermal electricity generating plant which creates steam to drive a turbine.

## stochastics

The theory of stochastics is based on the premise that prices close nearer the high in an uptrend, and nearer the low in a downtrend. %D Slow %D %K %R are all just names for different ways of smoothing the stochastic measures derived from the uptrend/downtrend theory.

# Light Sweet Crude Oil

**Market Data**
Current Session Overview
Current Expanded Table
Previous Session Overview
Previous Expanded Table
Squawk Box
**Contract Detail**
Description
Specifications
Margins
Termination Schedule
Request for Information

Crude oil is the world's most actively traded commodity, and the NYMEX Division light, sweet crude oil futures contract is the world's most liquid forum for crude oil trading, as well as the world's largest-volume futures contract trading on a physical commodity. Because of its excellent liquidity and price transparency, the contract is used as a principal international pricing benchmark. Additional risk management and trading opportunities are offered through options on the futures contract; calendar spread options; crack spread options on the pricing differential of heating oil futures and crude oil futures and gasoline futures and crude oil futures; and average price options.

The contract trades in units of 1,000 barrels, and the delivery point is Cushing, Oklahoma, which is also accessible to the international spot markets via pipelines. The contract provides for delivery of several grades of domestic and internationally traded foreign crudes, and serves the diverse needs of the physical market.

Light, sweet crudes are preferred by refiners because of more...

**Daily Chart -**

CL(I

C=Last



**Margins** view

**Non-Member Customer Initia**

**Member Custo Initial**

**Clearing Memb Customer Maintenance**

©2006 New York Mercantile Exchange,Inc. All Rights Reserved.
Disclaimer Privacy Policy Report abuse

**Sour or Sweet Crude**
Industry terms which denote the relative degree of a given crude oil's sulfur content. Sour crude refers to those crudes with a comparatively high sulfur content, 0.5% by weight and above; sweet refers to those crudes with sulfur content of less than 0.5%.

**Sour Gas**
Natural gas found with a sufficiently high quantity of sulfur to require purifying prior to shipment or use.

**Spark Spread**
The spark spread reflects the costs or anticipated costs of producing power from a specific facility. It can be used as a method of converting millions of Btus to megawatt hours and vice versa, and thus relates well to the electricity and natural gas futures contracts. The spread is simply the heat rate (a proxy for efficiency) of a specific generating unit or power system (the number of Btus needed to make one kilowatt hour of electricity), multiplied by the cost of energy expressed as dollars per British thermal units (Btus). For example, if it takes 10,000 Btus to make one kilowatt hour of electricity, the formula can be simplified by multiplying the price per million Btus (MMBtu) by 10 to equate one MMBtu of natural gas to one megawatt hour (Mwh) of electricity. The usefulness of the spread evaluation is dependent on the market price for power which reflects the relationship of the supply and demand for power, not the efficiencies of the generating units. Other costs affecting the price of power using the spark spread evaluation include those of gas transportation, power transmission, plant operations and maintenance, and fixed costs. Because the electricity futures contract is specified in lots of 736 megawatt hours, and the natural gas futures contracts are specified in units of 10,000 million Btus, one power contract equates to 0.736 natural gas contracts.

**Specifications**
1) Contract terms specified by the Exchange. 2) Term referring to the properties of a given crude oil or refined petroleum product, which are "specified" since they often vary widely even within the same grade of product. In the normal process of negotiation, seller will guarantee buyer that the product or crude to be sold will meet certain specified limits. Generally, the major properties of oil that are guaranteed are API gravity, sulfur, pour point, viscosity, and BS&W.

**Specific Gravity**
The ratio of the density of a substance at 60 degrees Farenheit to the density of water at the same temperature.

**Speculative Position Limit**
The maximum position, either net long or net short, in one commodity futures or options, or in all futures or options of one commodity combined, which may be held or controlled by an entity without a hedge exemption as prescribed by an exchange or the Commodity Futures Trading Commission.

**Speculator**
A trader who hopes to profit from the specific directional price move of a futures or options contract, or commodity.

**Spot**
Term which describes one-time open market case (CHANGE TO CASH) transaction, where a commodity is purchased "on the spot" at current market rates. Spot transactions are in contrast to term sales, which specify a steady supply of product over a period of time.

**Spot Month**
The futures contract closest to maturity. The nearby delivery month.

**Spread (Futures)**
The simultaneous purchase and sale of futures contracts for different months, different commodities, or different grades of the same commodity.

**Spread (Options)**
The purchase and sale of options which vary in terms of type (call or put), strike prices, expiration dates, or both. May also refer to an options contract purchase (sale) and the simultaneous sale (purchase) of a futures contract for the same underlying commodity.

**Stock-Type Settlement**
A settlement procedure in which the purchase of a contract requires immediate and full payment by the buyer to the seller. In stock-type settlement, the actual cash profit or loss from a trade is not realized until the position is liquidated. NYMEX Division energy and platinum options have this type of settlement procedure, which differs from that in the futures market where gains and losses are realized on a daily basis.

TITLE 48--Federal Acquisition Regulations System
Chapter 1--Federal Acquisition Regulation
Subchapter C--Contracting Methods and Contract Types
Part 15--Contracting by Negotiation
Subpart 15.6--Source Selection

15.610 Written or oral discussion.

(a) The requirement in paragraph (b) below for written or oral discussion need not be applied in acquisitions--

(a)(1) In which prices are fixed by law or regulation;

(a)(2) Of the set-aside portion of a partial set-aside; or

(a)(3) In which it can be clearly demonstrated from the existence of full and open competition or accurate prior cost experience with the product or service that acceptance of the most favorable initial proposal without discussion would result in the lowest overall cost to the Government at a fair and reasonable price; provided, that--

(a)(3)(i) The solicitation notified all offerors of the possibility that award might be made without discussion; and

(a)(3)(ii) The award is in fact made without any written or oral discussion with any offeror.

(b) Except as provided in paragraph (a) above, the contracting officer shall conduct written or oral discussion with all responsible offerors who submit proposals within the competitive range. The content and extent of the discussions is a matter of the contracting officer's judgment, based on the particular facts of each acquisition (but see paragraphs (c) and (d) below).

(c) The contracting officer shall--

(c)(1) Control all discussions;

(c)(2) Advise the offeror of deficiencies in its proposal so that the offeror is given an opportunity to satisfy the Government's requirements;

(c)(3) Attempt to resolve any uncertainties concerning the technical proposal and other terms and conditions of the proposal;

(c)(4) Resolve any suspected mistakes by calling them to the offeror's attention as specifically as possible without disclosing information concerning other offerors' proposals or the evaluation process (see 15.607 and Part 24); and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c)(5) Provide the offeror a reasonable opportunity to submit any cost or price, technical, or other revisions to its proposal that may result from the discussions.

(d) The contracting officer and other Government personnel involved shall not engage in--

(d)(1) Technical leveling (i.e., helping an offeror to bring its proposal up to the level of other proposals through successive rounds of discussion, such as by pointing out weaknesses resulting from the offeror's lack of diligence, competence, or inventiveness in preparing the proposal);

(d)(2) Technical transfusion (i.e., Government disclosure of technical information pertaining to a proposal that results in improvement of a competing proposal); or

(d)(3) Auction techniques, such as--

(d)(3)(i) Indicating to an offeror a cost or price that it must meet to obtain further consideration;

(d)(3)(ii) Advising an offeror of its price standing relative to another offeror (however, it is permissible to inform an offeror that its cost or price is considered by the Government to be too high or unrealistic); and

(d)(3)(iii) Otherwise furnishing information about other offerors' prices.

[50 FR 1741, Jan. 11, 1985]

Authority: 40 U.S.C. 486(c); 10 U.S.C., Chapter 137; and 42 U.S.C. 2453(c).

Source: 48 FR 42186, Sept. 19, 1983; 50 FR 52429, Dec. 23, 1985, unless otherwise noted.

48 CFR s 15.610

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| VALERO REFINING-TEXAS, L.P., And DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, And DIAMOND SHAMROCK REFINING COMPANY, L.P. And SUNBELT REFINING COMPANY, L.P. Plaintiffs, v. THE UNITED STATES, Defendant. | No. 03-1916C (Judge Firestone) |

DECLARATION OF JOHN R. WALKER

1. My name is John R. Walker and I am a contracting officer with the Defense Energy Support Center (DESC). I have been with DESC since 1983, except for a period from 1987-1989, when I worked for the Naval Sea Systems Command. I have been a DESC contracting officer since 1989.

2. DESC or its predecessor, the Defense Fuel Supply Center, awarded Valero Refining-Texas, L.P., Diamond Shamrock Refining and Marketing Co., Diamond Shamrock Refining Co., L.P., Sunbelt Refining Co., L.P. (Sunbelt), and their predecessor firms a series of 36 contracts between 1985 and 1999 that are the subject of economic price adjustment clause claims. These

contracts were awarded in DESC's domestic bulk fuels program. Most of the contracts were indefinite quantity-type contracts for one year and called for the delivery of large volumes of fuel.

3. In my declaration of January 26, 2006, I stated that many of the solicitations for these contracts provided that a portion of the requirement was set aside for participation by small business concerns. I have subsequently reviewed the bulk fuels contract files that are still available and determined that the following six bulk fuels contracts were awarded pursuant to solicitations that did not include small business set-asides:

DLA600-88-D-0632
DLA600-90-D-0563
DLA600-90-D-0578
DLA600-93-D-0492
SP0600-96-D-0480
SP0600-99-D-0480

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 4-7-06.

JOHN R. WALKER
Contracting Officer